IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**SHARMUS DARCEL EVANS,**

     **Plaintiff,**

     **v.**                         **CASE NO.  25-3156-JWL**

**JOHNSON COUNTY DISTRICT
ATTORNEY, et al.,**

     **Defendants.**


### MEMORANDUM AND ORDER
### TO SHOW CAUSE

Plaintiff brings this pro se civil rights action invoking 28 U.S.C. § 1331.  Plaintiff is incarcerated at the Glynn County Adult Detention Center in Brunswick, Georgia.  The Court granted Plaintiff leave to proceed in forma pauperis.  For the reasons set forth below, Plaintiff is required to show good cause, in writing to the undersigned, why this action should not be dismissed.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I.  Nature of the Matter Before the Court**

In this matter, Plaintiff has filed a complaint (Doc. 1) and what appears to be an amended complaint (Doc. 8).  Plaintiff's Complaint is based on the purported theft of his online identity.  Plaintiff states that on July 31, 2024, he was at the Olathe Public Library in Olathe, Kansas, using one of the public access computers when he received a "Google email and text, mobile message account 'Security Alert,' notifying Plaintiff that someone were [sic] attempting to login and gain access to his accounts, including passwords."  (Doc. 1, at 11.)  Google also advised Plaintiff to immediately sign out of his accounts.  *Id.*

1

Plaintiff reported this incident to a library clerk, but his complaint was ignored, and he "received no relief." *Id.* He then "reached out" to the Olathe Police/Sheriff's Office to file a citizen's complaint about the incident, including the fact that the library personnel "were reluctant in not helping Plaintiff by calling or reporting this incident to law authorities." *Id.* at 12.

The Complaint alleges that on August 2, 2024, Plaintiff received a few more Google email account security notifications, as well as Boost Mobile security text messages, informing him that someone had gained access to his accounts and was attempting to change the passwords. *Id.* In addition, on the same date, Plaintiff received another Google alert "indicating that someone, or more than three to five persons or individuals, were attempting to withdraw money, U.S. currency, from his Brinks Armored account, etc. by utilizing an ATM . . . located at QuikTrip" in Olathe, Kansas. *Id.* at 12-13. Plaintiff asserts that these events occurred as a result of the July 31 Olathe Public Library computer incident. *Id.* at 12.

Plaintiff states that he again made a report to Olathe law enforcement by calling the 911 non-emergency line. "Relief were to no avail . . .." *Id.* at 13. He also attempted to contact his banks and other financial institutions to inform them of the fraudulent activity, but "someone, Identity Theft Thief, hacked, interrupted, interfered or sabotaged Plaintiff's mobile device direct communication, via intercepting his call." *Id.*

On August 3, 2024, Plaintiff again used a public access computer at the Olathe library to try to access his Google email accounts and found more of his accounts had been compromised. *Id.* at 13-14. He again attempted to report this latest development to library personnel and law enforcement officials "to no avail." *Id.* at 14.

On August 4, 2024, Plaintiff was sitting outside the Olathe QuikTrip when he received notification that his Google email and other accounts had been compromised and that someone

was trying to withdraw money from his Brinks and PayPal business accounts via ATM. *Id.* He contacted Olathe law enforcement by telephone and was given a citizen's complaint report number but no resolution to his complaints. *Id.* The next day, Plaintiff again "attempted" to contact his financial institutions. *Id.* at 14-15. On August 6, 2024, Plaintiff alleges that he returned to the library and filed an identity theft recovery plan with the IRS and the Federal Trade Commission. *Id.* at 15.

Plaintiff names the following fifteen (15) defendants in the Complaint: the Johnson County District Attorney; the Olathe Medical Center; the City of Olathe Police/Sheriff's Office; the Department of Motor Vehicle; the Johnson County Marriage License office; the Olathe Downtown Public Library; Catholic Charities; Surestay by Best Western of Olathe; Johnson County Mental Health; Johnson County Adult Probation; Social Security Administrative Office; QuikTrip Convenience Store; Walmart Super Center; "known and unknown named defendants"; and the USPS. He seeks relief in the form of a declaration that the acts or omissions described violated his civil rights under the Constitution; an order requiring the defendants to disclose information in reference to the theft of his identity and to stop collection activities against him; and compensatory damages of $25,000 and punitive damages of $50,000 from each defendant. *Id.* at 17-20.

The Amended Complaint ("AC") expands the list to fifty (50) defendants. While deleting some defendants, Plaintiff adds the State of Kansas, the warden of the Norton Correctional Facility, traffic court administrators, the manager of Waffle House in Olathe, the manager of a 7 Eleven store, and a clerk at Camping World, to name but a few. He states that "each defendant criminally acted under the color of Kansas City state laws." (Doc. 8, at 3.)

The AC continues to assert that it is a civil rights complaint. The identity theft forming the basis of the Complaint is explained in less detail (*id*. at 7-8, 10), although Plaintiff adds the

assertion that the theft of his identity started in 2015 (when he resigned from Wendy's and started his own book publishing and online fashion businesses) and continues to the present date (*id*. at 8). Confusingly, Plaintiff states elsewhere in the AC that the identity theft occurred "starting July 31, 2024 and in between August 1, 2024 thru August 5, 2024." *Id*. at 10. The AC does not describe any incidents other than the alleged online identity theft.

Plaintiff asserts that "the defendant(s) committed wrongful criminal acts" by "falsifying rent or home mortgage loan payments; "falsifying real estate, income taxes, property insurance"; "falsifying RV mobile home purchases"; "falsifying utilities, electricity bills, heating fuel, water sewer and telephone lines"; "falsifying medical and dental care expenses"; "falsifying insurance deducted from unauthorized employment wages"; "falsifying marriage license documentation . . . in order to receive alimony, maintenance and support paid to others"; "falsifying applications . . . to apply for prepaid debit cards, gift cards, debit/credit cards or memberships"; "falsifying regular expenses for the operation of the plaintiff's businesses, beauty salons, barber shops, etc."; and publicizing private materials about the plaintiff on his Facebook page, exposing him to "public scorn." *Id*. at 9-11.

Without any additional explanation, Plaintiff alleges that he was "denied access from any or 'all' public court proceedings unless the judge decided that plaintiff's testimony would change significantly if court heard other testimony" (*id*. at 14); "denied of an opportunity to confer with attorney(s) for the State of Kansas, or government in any 'all' civil probate, marriage, unauthorized, none consented license office or criminal case proceedings" (*id*.); denied full timely restitution for the identity theft (*id*.); denied his rights to liberty and freedom or to be treated with fairness and respect for dignity or privacy (*id*.); denied the right to medical care when physicians and nurses acted with "deliberate indifference" to a serious medical need (*id*. at 14-15); and denied

his civil rights "when Overland Park Police Sheriff Deputy, or City of Olathe Police Sheriff Deputies, or law enforcement authorities violated the plaintiff's First Amendment U.S. Constitutional included rights to privacy, to be free from unreasonable search and seizures, unlawful arrest" (*id*. at 15).

The AC includes three (3) counts. Count I is for the denial of the plaintiff's First Amendment rights by the State of Kansas District Attorney. For supporting facts, Plaintiff states "see" pages 11-15 of the AC, as summarized above. *Id*. at 12. Count II is for the denial of Plaintiff's First Amendment rights by the State of Kansas. The supporting facts portion of the form again refers to pages 11-15 of the AC. *Id*. Count III asserts that Plaintiff was "denied reasonable, accurate and timely notice about any related public court or parole proceedings or release, or escape of any accused theft of identity" and again refers to pages 11-15 of the AC. *Id*. at 12-13.

The AC asks the Court to enter judgment declaring that the described acts or omissions violated his civil rights. *Id*. at 18. Plaintiff further seeks an injunction ordering the defendants to give him copies of all material evidence regarding the theft of his identity and various accounts in accordance with their responsibilities under the Fair Credit Reporting Act, 15 U.S.C. § 1681-1684. *Id*. Plaintiff also asks the Court to order the defendants to give him letters explaining what each defendant has done to inform businesses where accounts were opened in Plaintiff's name that the debt is the result of identity theft; to stop collection activities against Plaintiff; to stop reporting information about any or all debt attributed to Plaintiff to credit bureaus, Equifax, and other financial institutions without Plaintiff's consent; to notify all credit reporting agencies, the IRS, financial institutions, etc. that Plaintiff's debt is the result of identity theft; and to cease their criminal threatening and interference with Plaintiff's custody of his daughter. *Id*. at 19-20. Finally,

Plaintiff seeks compensatory damages of $25,000 and punitive damages of $25,000 from each defendant. *Id*. at 20.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

7

## III. DISCUSSION

Plaintiff brings three (3) counts in this lawsuit. None of the counts state a claim upon which relief may be granted. In addition, most of the defendants are subject to dismissal.

### A. Count I

Count I is for the denial of the plaintiff's First Amendment rights by the "State of Kansas District Attorney." There are two primary problems with this count. The first is that the defendant, whether Plaintiff intended to name the Kansas Attorney General or the District Attorney for Johnson County, Kansas, is immune from liability under § 1983. Prosecutors are absolutely immune from civil liability for damages for "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, 520 F.3d 1183, 1193 (10th Cir. 2008) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 209 (1993)).

The second problem with Count I is that Plaintiff provides no factual allegations that explain or support his claim that this (or any) defendant violated his First Amendment rights. For supporting facts, Plaintiff states "see" pages 11-15 of the AC, but the AC does not explain what this defendant did or did not do that may have violated or denied Plaintiff his rights under the First Amendment. As explained above, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall*, 935 F.2d at 1110. "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious*, 492 F.3d at 1163. Plaintiff has failed to state a claim in Count I.

### B. Count II

Count II is for the denial of Plaintiff's First Amendment rights by the State of Kansas. As with Count I, the defendant is immune from liability. The State of Kansas is absolutely immune to suit for money damages under the Eleventh Amendment. Consequently, suits against the State and its agencies are barred, absent consent, regardless of the relief sought. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Trujillo v. Williams*, 465 F.3d 1210, 1214 n.1 (10th Cir. 2006); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Count II is subject to dismissal on this basis alone.

In addition, Count II suffers from the same lack of factual allegations as Count I. Plaintiff again merely refers to pages 11-15 of the AC, making no specific allegations about the State of Kansas and no attempt to explain his claim that the State of Kansas violated his First Amendment rights.

### C. Count III

Count III asserts that Plaintiff was "denied reasonable, accurate and timely notice about any related public court or parole proceedings or release, or escape of any accused theft of identity" and again refers to pages 11-15 of the AC. Count III names no defendant, asserts no constitutional violation, and includes no additional details. Count III fails to state a claim.

### D. Other possible claims mentioned in the AC

Plaintiff includes a statement that his Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights have been violated (AC, Doc. 8, at 6). However, he does not explain how the actions or inactions of any defendant violated those rights, and the Court will not attempt to construct a legal theory for Plaintiff. *See Whitney*, 113 F.3d at 1173-74.

In addition, Plaintiff refers to the Fair Credit Reporting Act ("FCRA").  The FCRA imposes a duty on those who provide information to credit reporting agencies to accurately report information.  15 U.S.C. § 1681s–2(a). While it also gives consumers a private right of action against those who violate its provisions, *see* 15 U.S.C. § 1681n (right of action against willful violators); 15 U.S.C. § 1681o (right of action against negligent violators), that right of action is limited to claims against the credit reporting agency; it does not extend to persons who furnish information to agencies.  *Marner v. Lokshina*, No. 15-CV-0991-LTB, 2015 WL 4761370, at *8 (D. Colo. Aug. 13, 2015), *citing Sanders v. Mountain America Federal Credit Union,* 689 F.3d 1138, 1147 (10th Cir. 2012).  Plaintiff does not include a count for violation of the FCRA and does not allege any specific defendant should be liable under FCRA.  To the extent Plaintiff intended to bring a FCRA claim, it is subject to dismissal.

### E.  Problems with the defendants

Plaintiff includes a list of fifty (50) defendants but does not mention most of them in the body of the AC.  Plaintiff must show how each named defendant personally participated in the deprivation of his constitutional rights.  An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions— personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo*, 465 F.3d at 1228 ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added)

(citation omitted)).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.  Those defendants without specific allegations in the body of the AC are subject to dismissal from this action.

Furthermore, most of the defendants are not state actors.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West*, 487 U.S. at 48–49 (1988); *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action."  *West*, 487 U.S. at 42; *Polk County v. Dodson*, 454 U.S. 312 (1981).  Thus, it is of no consequence how discriminatory or wrongful the actions a plaintiff may describe; merely private conduct does not satisfy the "under color of" element and therefore no § 1983 liability exists.  *See Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 294–96 (2001); *American Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  A defendant acts "under color of state law" when he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West*, 487 U.S. at 49; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1208 (10th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006).

Plaintiff seeks to hold numerous private actors accountable and does not plausibly plead that the defendants acted under color of state law. The Court lacks jurisdiction over these defendants under § 1983. *See Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019) ("We conclude that the complaint failed to provide sufficient factual matter to allege that Keefe was a state actor; therefore, the federal courts lack jurisdiction over this claim.").

## IV. Motions

### A. Motion for Appointment of Counsel (Doc. 2)

Plaintiff asks the Court to appoint counsel because he cannot afford representation and because the case involves complex legal and factual issues requiring a lot of investigation. (Doc. 2, at 1.)

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).

The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not overly complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion if Plaintiff's AC survives screening.

### B.  Motion for Discovery (Doc. 4)

Plaintiff seeks to have the defendants produce a long list of "evidence."  Plaintiff's Complaint has not passed the screening stage, and to the extent Plaintiff is seeking discovery at this stage in the proceedings, the request is denied without prejudice as premature.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his AC should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1]  Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (25-3156-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient AC and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 2) and Motion for Discovery (Doc. 4) are **denied without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **November 7, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **November 7, 2025**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated October 8, 2025, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

14